# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

WILLIAM LOUIS ARMSTRONG,

Plaintiff,

v.

CITY OF MILWAUKEE, CHAD
CRIVELLO, SERGIO TORRES, and
MILWAUKEE POLICE
DEPARTMENT,

Defendants.

Case No. 24-CV-1389-JPS

# ORDER

## 1.    INTRODUCTION

Plaintiff William Louis Armstrong ("Plaintiff") sues Defendants City of Milwaukee (the "City of Milwaukee" or the "City"), Chad Crivello ("Crivello"), Sergio Torres ("Torres"),[1] and the Milwaukee Police Department ("MPD") (collectively, "Defendants"), for violations of both state and federal law. ECF No. 10 (second amended complaint).[2] He also moves for leave to proceed in forma pauperis, ECF No. 2, and for e-filing privileges, ECF No. 11.[3] This Order screens Plaintiff's second amended complaint and addresses his pending motions.

---

[1]Plaintiff notes that he is not entirely sure if he has correctly named this defendant. ECF No. 10 at 1 ("[T]here may be a mistake in naming this defendant . . . so I'm including a description . . . .").

[2]Plaintiff also makes allegations against Milwaukee County, so the Court will order that the Clerk of Court add Milwaukee County to this matter as a defendant. *See* ECF No. 10 at 26. The Court will also order the Clerk of Court to update ECF No. 10 to read "Second Amended Complaint" instead of "Amended Complaint."

[3]Plaintiff also moves for an extension of time to effectuate service of process. ECF No. 12. The Court will deny that motion as premature. Service of

For the reasons discussed herein, the Court will grant Plaintiff's motions for leave to proceed in forma pauperis and for e-filing privileges. The Court also concludes that Plaintiff may proceed on various claims for relief, that he may attempt to amend his pleadings to state several other claims that are subject to dismissal without prejudice, and that one remaining claim will be dismissed with prejudice.

## 2.     MOTION TO PROCEED IN FORMA PAUPERIS

A party proceeding pro se may submit a request to proceed without prepaying the filing fee, otherwise known as a motion to proceed in forma pauperis. "The federal in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure [that] indigent litigants have meaningful access to the federal courts while at the same time prevent indigent litigants from filing frivolous, malicious, or repetitive lawsuits."[4] *Rodriguez v. Crim. Just. Facility Safety Bldg.*, No. 23-CV-394, 2023 WL 3467565, at *1 (E.D. Wis. Apr. 7, 2023) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)), *report and recommendation adopted sub nom. Rodriguez v. Crim. Just. Facility*, No. 23-CV-394-PP, 2023 WL 3467507 (E.D. Wis. May 15, 2023).

---

process in a case such as this does not occur until after the Court has screened the complaint. *See Johnson v. Facebook*, No. 23-cv-1142-pp, 2023 U.S. Dist. LEXIS 186916, at *12 (E.D. Wis. Oct. 18, 2023) ("[The] . . . screening process occurs *before* the court orders the complaint to be served on any defendant." (citing 28 U.S.C. § 1915(d) and *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999))). In other words, the 90-day period for effectuating service of process has not yet begun to run. Should any issue with service of process arise in the future, Plaintiff may renew his motion.

[4]Although 28 U.S.C. § 1915(a) specifically references "prisoner" litigants, it has been interpreted as providing authority for such requests by both prisoner and non-prisoner pro se litigants alike. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997), *superseded by rule on other, inapplicable grounds as recognized by Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999); *see also Mitchell v. Farcass*, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) ("Section 1915(e) applies to all [in forma pauperis] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.") (Lay, J., concurring).

To determine whether it may authorize a litigant to proceed in forma pauperis, the Court engages in a two-part inquiry. It must examine whether the litigant is able to pay the costs of commencing the action. 28 U.S.C. § 1915(a). The Court must also examine whether the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"; if any of these criteria applies, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Likewise, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The Court engages in this part of the inquiry *infra* Section 4.

It follows that a litigant whose complaint does not clear the § 1915(e)(2) threshold or does not plead claims within the Court's subject matter jurisdiction, and whose case cannot proceed as a result, necessarily cannot reap the benefits of proceeding in forma pauperis. In other words, although in forma pauperis status ought to be granted to those impoverished litigants "who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972), a pro se litigant's financial status is only part of the picture in determining whether the litigant's case may proceed without payment of the filing fee.

Because the Court concludes *infra* Section 4 that Plaintiff pleads claims within the Court's subject matter jurisdiction, the Court addresses the merits of his motion for leave to proceed in forma pauperis. Plaintiff avers that he is unemployed and unmarried. ECF No. 2 at 1. His primary income source is Social Security Income. *Id.* at 2. He does not own his home or a vehicle. *Id.* at 2–3. He has some savings, but no other property of value.

*Id.* at 3–4. The Court is therefore satisfied that Plaintiff is indigent, and it will accordingly grant his motion for leave to proceed in forma pauperis.

**3.      MOTION FOR E-FILING PRIVILEGES**

Plaintiff also moves for e-filing privileges. ECF No. 11. He argues that he should be permitted to file electronically because he already has a PACER account and, given his indigency, *see supra* Section 2, would save money by not having to print his filings. *Id.* Similarly, Plaintiff notes that as an "electronic party[,] [he] would have access to free digital copies of court orders right away instead of having to pay in order to access them immediately." *Id.* He would also like to be alleviated from the burden of having to travel to the courthouse to file documents in his case. *Id.* Since Plaintiff does not own a vehicle, ECF No. 2 at 3, the Court understands that regularly traveling to the courthouse for filing purposes may be burdensome.

This District's policies provide that "[p]arties proceeding *pro se* cannot file electronically unless authorized by the court." Electronic Case Filing Policies and Procedures Manual, E.D. Wis., at 1 https://perma.cc/98HT-PCZE (last revised Dec. 2, 2024). E-filing privileges are not granted to pro se litigants as a matter of course. Nevertheless, given Plaintiff's representations, his indigency, the costs associated with filing hard copies of documents, and Plaintiff's lack of vehicle (rendering his ability to drop off filings in person more difficult), the Court will grant his motion for e-filing privileges. As Plaintiff notes, he does not "have a history of abusing electronic filing privileges." ECF No. 11. Should he demonstrate any such abuse, or if it becomes otherwise apparent that he is no longer entitled to e-filing privileges, the Court may revoke Plaintiff's e-filing privileges without further notice.

By participating in Electronic Case Filing, Plaintiff must abide by the Court's "ECF Policies and Procedures," which are available on the Court's website, https://www.wied.uscourts.gov/e-filing. Once registered for e-filing, Plaintiff will no longer receive paper copies of any materials filed by the Court or any opposing party. Rather, he will receive service exclusively through the email address associated with his account. Additionally, he must file all documents electronically (even those he may not have in electronic format).

Plaintiff will be provided with instructions regarding e-filing registration. Plaintiff shall complete his e-filing registration as soon as practicable and should contact the Clerk's Office with any questions regarding that process.

## 4. SCREENING THE SECOND AMENDED COMPLAINT

### 4.1 Legal Standard

As noted above, when a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on the defendants. The Court "shall dismiss the case" if it finds any of the following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, Fed. R. Civ. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*, 490 U.S. at 325); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal

theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing a complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### 4.2 Plaintiff's Factual Allegations

The Court discerns the following from Plaintiff's second amended complaint. In the months leading up to and including November 2021, Plaintiff was "doing outreach" with "historically marginalized and underserved communities" in Milwaukee, including "prostitutes." ECF No. 10 at 2. Plaintiff intended to run for mayor of the City of Milwaukee "if the vacancy occurred" and to "develop a public benefit company benefit[t]ing prostitutes." *Id.* He wished to offer "prostitutes" lawful work in the business/company that he intended to develop. *Id.* at 2–3.

On November 10, 2021, Plaintiff was driving near South 23rd Street and National Avenue when he was flagged down by a woman who called out to him and asked for a cigarette. *Id.* at 3. Plaintiff pulled over and gave the woman, who introduced herself as "Chanel,"[5] a cigarette. *Id.* Chanel asked to ride around with Plaintiff. Plaintiff agreed but told Chanel that she'd "get no money from" him. *Id.* Plaintiff thereafter invited Chanel for a drink, and he stopped at a gas station to purchase condoms because they had been flirting, and he believed they would likely engage in sex even though neither he nor Chanel had "offered or requested . . . the performance of sexual acts." *Id.* Plaintiff left his vehicle running with Chanel in it while he went into the gas station. *Id.* While he was inside, Chanel made off with the vehicle. *Id.*

After waiting a short while to see if Chanel would return with his vehicle, Plaintiff contacted the police. *Id.* at 4. He went to the police station and was questioned by Crivello, a MPD officer. *Id.* Crivello asked Plaintiff if he had known that Chanel was a "prostitute" and told Plaintiff that it was

---

[5]Plaintiff alternates between calling this individual "Channel" or "Chanel." *See generally* ECF No. 10.

"a crime to even meet" with her. *Id.* Plaintiff alleges that Crivello's police report mischaracterizes part of his statement. *Id.* After providing his statement, Plaintiff went home. *Id.*

Plaintiff called the police station later that evening to follow up. *Id.* Crivello told Plaintiff that police had obtained the surveillance video from the gas station but that it was "not gonna help," which Plaintiff believed to be discriminatory. *Id.* Crivello reiterated to Plaintiff that since Chanel "was a prostitute," Crivello could arrest Plaintiff. *Id.* Plaintiff verbally disagreed with Crivello, and Plaintiff said, "I can come down there and we can sort this out." Crivello responded, "if you come here[,] I'm going to arrest you." *Id.* Plaintiff went to the police station, put his hands up, and said, "I'm here." *Id.* at 5. Plaintiff believed that it would be easier and safer to surrender himself in this fashion than to have police potentially seek him out at his home or elsewhere. *Id.*

At the police station, Plaintiff and Crivello continued to disagree on whether it was "a crime to meet them," them being "prostitutes." *Id.* Plaintiff concedes that when he had been on the phone with Crivello, he had stated "she's a prostitute," but he alleges that context makes it obvious that he was not making "a statement that the woman in question was[,] in fact[,] a prostitute." *Id.* Torres, another MPD officer, then became involved. *Id.* at 5–6. Plaintiff was handcuffed to a bench before being transferred to a cell. *Id.* at 1. He was "arrested and issued a citation" for "loitering soliciting prostitutes" for this incident, which he alleges was not supported by probable cause. *Id.* at 6–8, 13. Plaintiff also alleges that these officers "framed him for felony crimes" that he did not commit and falsely wrote in their police reports that he admitted to "felony crimes," but he does not elaborate as to what "felony crimes" he is referring to. *Id.* at 6–7. He also

later notes that he was civilly prosecuted—and that that prosecution was "motivated by racial and sex[-]based prejudice"[6]—but that the City eventually "agreed to dismiss the charges with prejudice." *Id.* at 10.

Plaintiff alleges that the City has "formal written policies that require the police to arrest people on the basis of suspicion," that these policies "reinforce racial and sex[-]based segregation and discrimination," *id.* at 8, and that the MPD has "a practice of covering up misconduct by [its] members," *id.* at 25. He also alleges that the City and its police are more suspicious of "constitutionally protected behavior" and become suspicious of people "on account of their protected characteristics, including race[] and sex." *Id.* at 8. He also alleges that the City has a "pattern, practice, and custom[] of widespread and recurring sex and racial selective exercise of police and prosecutorial powers." *Id.* at 10. He contends that Crivello was "acting in accordance with this city policy when he cautioned [Plaintiff] against the person that he found suspicious by threatening to arrest [Plaintiff] after [he] met" Chanel, who is a black woman. *Id.* at 8; *id.* at 12 ("[B]ecause I was a man and because she was a woman, they saw her as a prostitute and me as a John . . . ."). He also alleges that the City "failed to adequately train" Crivello and other officers, *id.* at 11, and that "Milwaukee county has a policy of failing to comply with the due process requirements that potentially exculpatory evidence be provided to criminal defendants," *id.* at 25.

Plaintiff alleges various violations of both state and federal law, including violations of his Fourteenth Amendment equal protection rights; his Fourth Amendment rights against false arrest and unreasonable seizure;

---

[6]He later concedes, however, that he "can't speak from experience regarding [MPD officers'] racial prejudice." ECF No. 10 at 12.

his Wisconsin law right against malicious prosecution; his First Amendment rights to peaceably assemble and for freedom of speech, religion, and association; his Fourteenth Amendment right to "make contracts in connection with [his] business;" his "due process rights related to engaging in lawful business;" and his due process right against fabrication of evidence "that was introduced against [him] during his trial." *See generally* ECF No. 10; *id.* at 9, 15. He also asserts a "state[-]created danger" theory and a failure to intervene theory. *Id.* at 15–16.

### 4.3 Analysis

#### 4.3.1 Fourteenth Amendment Equal Protection

The Court begins with Plaintiff's purported claim for a violation of his equal protection rights under the Fourteenth Amendment. With respect to this claim, Plaintiff appears to argue generally that his treatment by Crivello was affected by Plaintiff's sex/gender and race, Chanel's sex/gender and race, as well as other factors including perceived socioeconomic status. ECF No. 10 at 9 ("In this case, the suspicion was caused by facts including the woman's race as a black person and my race as a white person, her perceived socioeconomic status because she was a pedestrian and because of where she was and its proximity to poverty, my sex and gender as a male and her sex and gender as a female, and our perceived sexual orientations . . . ."); *id.* at 14 ("I was discriminated against on the basis of my sex and gender and because of racial facts.").

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is "essentially a direction that all persons similarly situated should be treated alike." *Lawrence v. Texas*, 539 U.S. 558, 579 (2003) (quoting *Cleburne v. Cleburne*

*Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) and citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (O'Connor, J., concurring)). To state an equal protection claim under the Fourteenth Amendment, a plaintiff must plausibly allege "that a state actor treated him differently from others similarly situated because of his membership in a particular class and that the state actor did so purposefully." *Sand v. Milwaukee Cnty. House of Corr.*, No. 19-C-348, 2019 U.S. Dist. LEXIS 199537, at *11 (E.D. Wis. Nov. 18, 2019) (citing *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000)).

Plaintiff has sufficiently alleged for purposes of the screening stage that Crivello discriminated against him on the basis of Plaintiff's sex/gender and race in violation of the Equal Protection Clause.[7] He has not, however, stated a claim for discrimination based on socioeconomic status because he alleges that Crivello was influenced by Chanel's socioeconomic status, not Plaintiff's. *See id.* (a plaintiff must plausibly allege being treated differently "because of *his* membership in a particular class" (emphasis added)); ECF No. 10 at 9 ("[T]he suspicion was caused by . . . [Chanel's] perceived socioeconomic status . . . .").

Accordingly, Plaintiff may proceed on a claim that Crivello violated his Fourteenth Amendment equal protection rights by discriminating against him on the basis of his sex, gender, and race.

### 4.3.2   Fourth Amendment Unlawful Arrest/Seizure

Plaintiff also alleges that he was arrested and/or seized in violation of his Fourth Amendment rights. ECF No. 10 at 9, 13. Specifically, he alleges

---

[7]Notwithstanding this conclusion, Plaintiff's claim that he was discriminated against on the basis of race may be vulnerable to a motion to dismiss or other dispositive motion given his concession that he "can't speak from experience regarding [MPD officers'] racial prejudice." ECF No. 10 at 12.

that he was "arrested and issued a citation" without probable cause. ECF *Id.* at 7.

"To state a Fourth Amendment claim, a plaintiff must allege that the defendant's conduct constituted a seizure and that the seizure was unreasonable." *Welton v. Anderson*, 770 F.3d 670, 675 (7th Cir. 2014) (citing *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008)); *see also Molina v. Latronico*, 430 F. Supp. 3d 420, 434 (N.D. Ill. 2019) (noting that "[a]n arrest is one flavor of seizure," but other encounters may also qualify as seizures within the meaning of the Fourth Amendment (citing *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999))). "A seizure of a person is generally defined in terms of an intentional limitation of a person's freedom of movement." *Bielanski*, 550 F.3d at 637 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *California v. Hodari D.*, 499 U.S. 621, 625–26 (1991); and *Belcher v. Norton*, 497 F.3d 742, 748 (7th Cir. 2007)). The test for whether a seizure has occurred is an objective one, asking "what a reasonable person would believe." *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 200 (7th Cir. 1985) (citing *United States v. Borys*, 766 F.2d 304, 308 (7th Cir. 1985) and *United States v. Black*, 675 F.2d 129, 133–34 (7th Cir. 1982), *cert. denied*, 460 U.S. 1068).

To the extent that this claim is grounded in Plaintiff's pre-arrest questioning at the police station, the claim fails. Plaintiff was not seized at that time, since he voluntarily appeared at the police station without having even been told by police to go there. *See id.* (affirming conclusion that the plaintiff was not seized for Fourth Amendment purposes since he went to the police station voluntarily in response to phone call from officer, was not threatened, and no arrest warrant had been issued).

Case 2:24-cv-01389-JPS     Filed 03/18/25     Page 12 of 39     Document 13

Once he was formally arrested, however, a seizure occurred. *Molina*, 430 F. Supp. 3d at 434. The Court must next "consider whether [Plaintiff] plausibly alleged that the seizure was unreasonable." *Hess v. Garcia*, 72 F.4th 753, 764 (7th Cir. 2023); *see Welton*, 770 F.3d at 675. Plaintiff alleges that he was arrested or seized "without probable cause," for an "unlawfully extended" amount of time, and that his arrest or seizure was grounded in discrimination. ECF No. 10 at 13.

"It is axiomatic that '[a] warrantless arrest . . . must be supported by probable cause.'" *United States v. Sholola*, 124 F.3d 803, 814 (7th Cir. 1997) (quoting *United States v. Navarro*, 90 F.3d 1245, 1254 (7th Cir. 1996)). The probable cause inquiry is a "fact-intensive" one that "does not lend itself to definitive legal rules." *Jones by Jones v. Webb*, 45 F.4th 178, 181–82 (7th Cir. 1995) (citing *Illinois v. Gates*, 462 U.S. 213, 232 (1983) and *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)). Further, "a seizure that is lawful at its inception can violate the Fourth Amendment . . . if it is prolonged beyond the time reasonable required to complete [its] mission." *Hall v. City of Chicago*, 935 F.3d 945, 952 (7th Cir. 2020) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Given this authority, the Court is satisfied for purposes of the screening stage that Plaintiff has sufficiently alleged that his arrest violated his Fourth Amendment rights. He may accordingly proceed on a Fourth Amendment unlawful arrest claim against Crivello.

### 4.3.3 First Amendment

#### 4.3.3.1 Right to Peaceably Assemble and of Association

Plaintiff alleges that his First Amendment right to peaceably assemble was violated because he was "prevented from lawfully meeting with (assembling with) others by the threat of arrest for even meeting them." ECF No. 10 at 13. This allegation also implicates freedom of

association, so the Court will at this juncture address the concepts together notwithstanding Plaintiff's delineation of them separately. ECF No. 13 (asserting violation of right to freedom of association separately from violation of right to peaceably assemble); *see Santana v. Cook Cnty. Bd. of Rev.,* 779 F. Supp. 2d 830, 837 (N.D. Ill. 2011) ("With the First Amendment having confirmed 'the right of the people peaceably to assemble,' the courts have construed that right as embracing the right of free association . . . .'").

The First Amendment protects the "right of the people peaceably to assemble." U.S. CONST. amend. 1. The First Amendment also protects the "freedom of expressive association" and "ensures the right to associate for the purpose of engaging in activities protected by the First Amendment." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) (quoting *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005)). Similarly, it protects the "freedom of intimate association"—the "right 'to enter into and maintain certain intimate human relationships.'" *Id.* (quoting *Montgomery*, 410 F.3d at 937).

"Forbidding individuals acting in concert with others from engaging in certain activities while placing no such prohibition on individuals acting alone is an impermissible restraint on the right of association." *United States v. Wilson*, 154 F.3d 658, 665 (7th Cir. 1998) (citing *Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley*, 454 U.S. 290, 296 (1981)). "Freedom of association permits individuals to associate for lawful purposes and provides 'a right to join with others to pursue goals independently protected by the First Amendment.'" *Id.* (quoting *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1387 (7th Cir. 1992), *cert. denied*, 510 U.S. 992). "But the goals must be independently protected by the First Amendment;

there is no right to join with others to engage in illegal activities that are not protected by the First Amendment." *Id.*

As far as the Court can gather, Plaintiff essentially alleges that his First Amendment rights to peaceably assemble and associate were violated when Crivello repeatedly told him that he could not "meet with them," them being "prostitutes," threatened to and ultimately did arrest him and issue him a citation for the same, when Plaintiff was just trying to perform community outreach and/or engage in a consensual romantic and sexual encounter with Chanel not for pay. ECF No. 10 at 13. Based on these allegations, and given the Court's duty to liberally construe pro se plaintiffs' pleadings, *Kelsay*, 825 F. Supp. at 217 (citing *Haines*, 404 U.S. at 520–21), the Court does not at this juncture conclude that this claim is facially frivolous, facially fails to state a claim, or is otherwise clearly subject to dismissal, *see* 28 U.S.C. § 1915(e)(2)(B) and Fed. R. Civ. P. 12(h)(3). Plaintiff may therefore proceed on his right to assemble and of association claim against Crivello.

### 4.3.3.2 Freedom of Speech / First Amendment Retaliation

Similarly, Plaintiff alleges that Crivello[8] violated his First Amendment right to freedom of speech by threatening to arrest him, and

---

[8]It is not entirely clear whether Plaintiff additionally intends to proceed against Torres on this claim. *See* ECF No. 10 at 6 ("Torres . . . who was aiding and abetting the deprivation of civil rights under color of law . . . ."); *but see id.* at 16 ("Torres knew that . . . Crivello and the city of Milwaukee were depriving me of my right to meet with other people."). Plaintiff should clarify that in any third amended complaint.

And to the extent that Plaintiff intended to proceed with this claim against the City, *id.* at 16 (asserting that the City was "depriving [Plaintiff] of [his] right to meet with other people"), he cannot do so outside of a theory of municipal liability. *See infra* Section 4.3.10.

subsequently arresting him, for meeting with "prostitutes" when he was doing so for community outreach purposes. ECF No. 10 at 13 ("I . . . became limited in what I was able to do as a political advocate, I was no longer free to speak with people because I don't know who they'll call a prostitute, and [they] might arrest me for having met them."). The Court construes this as a First Amendment retaliation claim since Plaintiff alleges that he was threatened with arrest and subsequently arrested and issued a citation "in direct and express retaliation" for having met with "prostitutes" when he was attempting to perform community outreach and/or engage in a consensual romantic and sexual encounter with Chanel not for pay. ECF No. 10 at 13; *id.* at 7 (arguing that the City "continued with the prosecution of [Plaintiff] . . . in direct retaliation against [him] for meeting people, and insisting to the police that it wasn't a crime to meet them").

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)); *see also Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out . . . ." (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) and *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

The Court notes, however, that "a plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause." *Reichle v. Howards*, 566 US. 658, 666 (2012) (citing *Hartman*, 547 U.S. 250). Whether Plaintiff's First Amendment retaliation claim may be subject to dismissal on that ground is a question

for another day. For now, the Court does not find that this claim is facially frivolous, facially fails to state a claim, or is otherwise clearly subject to dismissal, *see* 28 U.S.C. § 1915(e)(2)(B) and Fed. R. Civ. P. 12(h)(3), and Plaintiff may therefore proceed on his claim of First Amendment retaliation.

### 4.3.3.3    Freedom of Religion

Plaintiff also alleges that his right to freedom of religion under the First Amendment was violated because he was hindered in performing his outreach, some of which "had a religious significance." ECF No. 10 at 13. This claim cannot proceed as pled.

"The Free Exercise Clause of the First Amendment protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.'" *Carson as next friend of O.C. v. Makin*, 596 U.S. 767, 778 (2022) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)). "To prevail on a free exercise claim, a plaintiff must first show that some state action burdened his or her exercise of religion." *McRoy v. Cook Cnty. Dep't of Corr.*, 366 F. Supp. 2d 662, 672–73 (N.D. Ill. 2005) (citing *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) and *C.L. for Urb. Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003), *cert denied*, 541 U.S. 1096 (2004)). "The government violates the free exercise clause where it takes action that burdens an individual's practice of his faith by pressuring him to either commit an act forbidden by the religion or by preventing him from engaging in conduct which his faith mandates . . . ." *Id*. at 673 (citing *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 140–41 (1987)). "This interference must be more than an inconvenience; the burden must be substantial." *Id.* (citing *Thomas v. Rev. Bd. of Ind. Emp.*

*Sec. Div.*, 450 U.S. 707, 717–18 (1981) and *Graham v. Comm'r*, 822 F.2d 844, 850–51 (9th Cir. 1987), *aff'd sub nom. Hernandez*, 490 U.S. 680).

As a threshold matter, it is unlikely that Plaintiff's outreach having some unspecified degree of "religious significance" suffices to constitute "religious exercise" for Free Exercise Clause purposes; "[i]n traditional First Amendment jurisprudence, 'religious exercise' can mean: the observation of a central religious belief or practice . . . or behaviors and beliefs that are compelled by a particular religion . . . ." *Id.* (citing *Hernandez*, 490 U.S. at 699 and *Thomas*, 450 U.S. at 717–18). Plaintiff's second amended complaint does not allow for the reasonable inference that his activity on the day in question constituted religious exercise.

Moreover, Plaintiff does not plausibly allege in his second amended complaint that his religious practice was burdened, let alone to an extent that would be actionable under the First Amendment. *See Perez v. Frank,* No. 06-C-248-C, 2007 U.S. Dist. LEXIS 27441, at *27 (W.D. Wis. Apr. 11, 2007) ("[T]he free exercise clause is concerned with the macrocosm of belief: so long as a believer's ability to freely practice his faith (rather than engage in all possible expressions of his faith) is not substantially burdened, the free exercise is not violated . . . ." (collecting cases)). For all these reasons, his First Amendment free exercise claim is subject to dismissal.

However, "[j]udges ordinarily should give a pro se plaintiff at least one opportunity to amend a complaint unless amendment would be futile." *Wade v. Barr*, 775 F. App'x 247, 248 (7th Cir. 2019) (citing *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) and *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015)). The Court cannot necessarily conclude at this juncture that amendment as to this claim would be futile. Accordingly, the dismissal of this claim will operate without prejudice.

### 4.3.4 Fourteenth Amendment right to "make contracts" and "engag[e] in lawful business"

Plaintiff alleges that Crivello[9] violated his Fourteenth Amendment rights to "make contracts in connection with [his] business" and his "due process rights relating to engaging in lawful business, including . . . [his] right to occupational liberty." ECF No. 10 at 10, 14; *id.* ("[I]f I can't meet for business, that significantly impairs my ability to contract. The people who I sought to serve . . . were an essential part of business . . . ."). The Court construes this as a purported Fourteenth Amendment due process claim, although it is not entirely clear whether Plaintiff purports to proceed on a substantive or procedural due process claim. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir. 2000) ("In contrast to substantive due process claims, 'in procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" (quoting *Doe by Nelson v. Milwaukee County*, 903 F.2d 499, 502 (7th Cir. 1990) (internal bracketing omitted))); *id.* at 501 n.16 (holding that a single event may result in both a substantive and a procedural due process claim (citing *Owen v. Lash*, 682 F.2d 648, 652 n.4 (7th Cir. 1982) and *Croft v. Westmoreland Cnty. Child. & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997))).

"The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of

---

[9]Again, it is not clear whether Plaintiff additionally intends to proceed against Torres on this claim. *Compare* ECF No. 10 at 10 (alleging that Crivello's "decision to commence the civil prosecution against [Plaintiff] injured [Plaintiff] in [his] rights, including . . . [his] [F]ourteenth [A]mendment right to make contracts") *with id.* at 14 (alleging that "[t]he defendants interfered with [Plaintiff's] right to make contracts"). He should clarify that in any third amended complaint.

law." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Matamoros v. Grams*, 706 F.3d 783, 789 (7th Cir. 2013)). The interests asserted by Plaintiff—occupational liberty and the right to contract—appear to fall under liberty rather than under property or life. "[T]o properly plead a due process claim under § 1983" premised on a deprivation of a liberty interest, "[a plaintiff] must sufficiently allege (1) that []he had a cognizable liberty interest under the Fourteenth amendment; (2) that []he was deprived of that liberty interest; (3) and that the deprivation was without due process." *Id.* (citing *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) and *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989)).

#### 4.3.4.1    Occupational Liberty

To the extent that Plaintiff attempts to ground a substantive due process claim in "occupational liberty," that claim fails at the first step of the analysis. "There are only a handful of fundamental rights for which the due process clause has a substantive component," *Bland*, 630 F.3d at 535 (quoting *Taake v. County of Monroe*, 530 F.3d 538, 542 (7th Cir. 2008)), and occupational liberty is not one of them. The Seventh Circuit has explicitly held that "[o]ccupational liberty . . . is not protected by substantive due process." *Zorzi v. County of Putnam*, 30 F.3d 885, 895 (7th Cir. 1994) (citing *Ill. Psych. Ass'n v. Falk*, 818 F.2d 1337, 1343–44 (7th Cir. 1987)). "Rather, any cause of action for the deprivation of occupational liberty would be confined to a claim under procedural due process . . . ." *Id.* (citing *Falk*, 818 F.2d at 1343–44)). The Court accordingly evaluates whether Plaintiff has plausibly stated a procedural due process claim grounded in occupational liberty.

"An occupational-liberty claim requires that the circumstances made it virtually impossible for [the plaintiff] to find a new position in his chosen

Case 2:24-cv-01389-JPS    Filed 03/18/25    Page 20 of 39    Document 13

profession." *Griffin v. Cook County*, No. 18-cv-03792, 2020 U.S. Dist. LEXIS 160668, at *12 (N.D. Ill. Sept. 2, 2020) (quoting *Palka v. Shelton*, 623 F.3d 447, 454–55 (7th Cir. 2010) (internal quotation marks omitted)). One difficulty with evaluating such a claim in the context of Plaintiff's pleadings is that it is not entirely clear what his purported profession or occupation is. *See Biggs v. Chi. Bd. of Educ.*, 82 F.4th 554, 560 (7th Cir. 2023) (noting at the outset that the court needed to "define [the plaintiff's] 'occupation'"); *id.* ("[I]t is best to think of an occupation as existing on a spectrum of generality—somewhere between a 'specific job' and a 'field.'"). Plaintiff alleges that he was performing community outreach to "historically marginalized and underserved communities, including prostitutes," intending to run for mayor, and planning to develop a public benefit company "benefit[t]ing prostitutes." ECF No. 10 at 2.

Even assuming arguendo that these endeavors constitute a profession or occupation for purposes of an occupational liberty interest, Plaintiff has not plausibly alleged that he has "suffered a tangible loss of employment opportunities" nor that Defendants' conduct "ha[s] made it '*virtually impossible* for h[im] to find new employment' within h[is] occupation." *Biggs*, 82 F.4th at 560 (quoting *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625–26 (7th Cir. 1986)). He does not allege that he has been prohibited from or constrained in performing the majority of his "outreach to members of the public"—only that he has been affected to the extent that he intended to meet in person with "prostitutes." ECF No. 10 at 2 (alleging that he had been performing outreach to "members of historically marginalized and underserved communities, *including prostitutes*" (emphasis added)). He does not allege that he has been prohibited or constrained from running for mayor. At most, he alleges that his efforts at

these endeavors have been limited or made more difficult by Defendants' conduct. But that is insufficient to state an occupational liberty claim. *See Biggs*, 82 F.4th at 560 ("'[P]ermanent exclusion from or protracted interruption of employment' is required to make out an occupational liberty claim" (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 456 (7th Cir. 1992))). Accordingly, Plaintiff may not proceed on a due process claim—substantive or procedural—in occupational liberty as pled in the second amended complaint. To the extent such a due process claim was intended to be procedural, the Court will dismiss the claim without prejudice, since it cannot necessarily conclude at this juncture that amendment would be futile. *See Wade*, 775 F. App'x at 248 (citations omitted). To the extent such a due process claim was intended to be substantive, however, the dismissal will operate with prejudice since amendment would be futile.

### 4.3.4.2    Right to Contract

The Court next addresses Plaintiff's contention that his due process right to contract has been violated. "The Supreme Court has recognized that individuals should remain free to enter into and carry out contracts with respect to their private property and affairs." *Khan v. Gallitano*, No. 98 C 649, 1998 U.S. Dist. LEXIS 7604, at *11 (N.D. Ill. May 13, 1998) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972) and *Highland v. Russell Car and Snowplow Co.*, 279 U.S. 253 (1929); *see also Anderson v. Dickson*, 715 F. App'x 481, 486 (6th Cir. 2017) (noting that the liberty interests protected by the Due Process Clause of the Fourteenth Amendment include "the right of the individual to contract" (quoting *Roth*, 408 U.S. at 572)).

As a threshold matter, whether the right to enter into contracts constitutes a fundamental interest such that it may serve as the basis for a

Case 2:24-cv-01389-JPS    Filed 03/18/25    Page 22 of 39    Document 13

substantive due process claim is not entirely clear. On the one hand, the Supreme Court has emphasized that "freedom in the making of contracts of personal employment . . . is an elementary part of the rights of personal liberty." *Prudential Ins. Co. of Am. v. Cheek*, 259 U.S. 530, 536 (1922). On the other hand, the Seventh Circuit has explicitly stated that a "right to contract" is too abstract and generalized "to guide [its] analysis" with respect to substantive due process. *Khan v. Gallitano*, 180 F.3d 829, 833–34 (7th Cir. 1999) (rejecting such a characterization of the interest as too "abstract" and "general"); *see also Anderson*, 715 F. App'x at 486 (concluding that the plaintiff failed to allege a fundamental interest for substantive due process purposes when he invoked the "right to contract" (quoting *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990))).

In any event, Plaintiff fails to plausibly allege that he was in fact deprived of his right to contract, let alone that any such deprivation rises to the level of a federal due process violation. *See Mann*, 707 F.3d at 877 (noting that an element of a due process claim is deprivation of the interest asserted) (citation omitted). To the extent that he references his right to contract and alleges that it was impaired, he does so only amorphously. *See Kloch v. Kohl*, 545 F.3d 603, 607 (8th Cir. 2008) ("Abstract injuries, by themselves, do not implicate the due process clause." (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6–7 (2003))). He does not plausibly allege that Defendants' conduct deprived him of his ability to contract. He does not specifically allege that he was attempting to contract, or was interested in contracting, with Chanel on the day in question; to the contrary, he originally interacted with her solely because she flagged him down for a cigarette, drove her because she asked for a ride, and continued their interaction because he anticipated that "things might continue to progress

sexually." ECF No. 10 at 3. At most, he has alleged that Defendants made it more difficult for him to engage with "prostitutes" via in-person meetings. This is insufficient to state a due process claim. "Where the exercise of government authority involves law enforcement officials, the Supreme Court has stated that a plaintiff's substantive due process rights are violated where the alleged abuse of government power 'shocks the conscience.'" *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). Not "every official abuse of power, even if unreasonable, unjustified, or outrageous, . . . rise[s] to the level of a federal constitutional deprivation." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) (citing *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992)); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012) ("Substantive due process claims can address harmful, arbitrary acts by public officials. . . . But such claims must meet a high standard, even when the alleged conduct was abhorrent, to avoid constitutionalizing every tort committed by a public employee." (citing *Lewis,* 523 U.S. at 845–46, 854 and *Tun v. Whitticker*, 398 F.3d 899, 902–03 (7th Cir. 2005)).

Given this authority, the Court concludes that the situation alleged by Plaintiff—that Defendants made it more difficult for him to contract with "prostitutes" via in-person meetings—fails to constitute a deprivation for due process purposes, let alone that it rises to the level of a federal due process violation. For all these reasons, Plaintiff's due process claim— whether substantive of procedural—grounded in his right to contract is dismissed. Although the Court does not expect that Plaintiff will be able to remedy these deficiencies, the dismissal will nevertheless operate without prejudice, since the Court cannot necessarily conclude at this juncture that

amendment as to that claim would be futile. *See Wade*, 775 F. App'x at 248 (citations omitted).

### 4.3.5 State Created Danger

Plaintiff also alleges that Defendants' actions "created a strong likelihood of serious harm to [P]laintiff or increased the likelihood that [P]laintiff would suffer serious harm." ECF No. 10 at 15. This claim cannot proceed as pled.

"The Due Process Clause of the Fourteenth Amendment generally does not impose a duty upon the state to protect individuals from harm by private actors." *Rakes v. Roederer*, 117 F.4th 968, 973 (7th Cir. 2024). The state-created danger doctrine is a limited exception to that general rule. It "applies when the state places a person in a dangerous situation and fails to protect the person from that danger." *Barilani v. Hous. Auth. of Eau Claire*, No. 21-cv-113-jdp, 2022 U.S. Dist. LEXIS 23031, at *13 (W.D. Wis. Feb. 9, 2022) (citing *Johnson v. Rimmer*, 936 F.3d 695, 706 (7th Cir. 2019)). "[S]tate officials . . . have a duty not to 'needlessly create risks of harm.'" *Rakes*, 117 F.4th at 973 (quoting *Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012)). This doctrine applies narrowly. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 988 (7th Cir. 2021) (citing *Doe v. Village of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015)).

To the extent that Plaintiff's allegations implicate the state-created danger doctrine, they are no more than an unadorned recitation of "the elements of a cause of action." *Ashcroft*, 556 U.S. at 678. Plaintiff baldly asserts that Defendants created a risk of harm to him, ECF No. 10 at 15, but his specific factual allegations do not support that contention. Plaintiff allowed Chanel into his car. ECF No. 10 at 3. He chose to pursue a sexual interaction with her, despite having previously felt the need to warn her

that she wouldn't "get [any] money from" him. *Id.* He solicited the police's involvement and later surrendered himself at the police station, by his own volition. *Id.* at 4–5. Plaintiffs' allegations do not allow for the reasonable inference that any Defendant "affirmatively place[d] [him] in a position of danger [that he] otherwise would not have faced." *Rakes*, 117 F.4th at 974 (quoting *Wallace v. Adkins*, 115 F.3d 427, 430 (7th Cir. 1997)). Further, the Court could not conclude that any failure on Defendants' part to "protect the plaintiff . . . shock[s] the conscience." *Id.* (quoting *First Midwest Bank*, 988 F.3d at 988); *First Midwest Bank*, 988 F.3d at 989 ("Only the most egregious official conduct will satisfy this stringent inquiry." (quoting *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) (internal quotation marks omitted))).

For these reasons, the Court will dismiss Plaintiff's claim premised on the state-created danger doctrine. Again, the Court does not anticipate that Plaintiff will be able to remedy his pleadings to state such a claim; nevertheless, since the Court cannot necessarily conclude at this juncture that amendment would be futile, it will dismiss this claim without prejudice. *See Wade*, 775 F. App'x at 248 (citations omitted).

### 4.3.6    Violation of 42 U.S.C. § 1981

A liberal review of Plaintiff's complaint also reveals a potential claim under 42 U.S.C. § 1981 since Plaintiff alleges that his right to contract was impaired, potentially on the basis of his race or on the basis of his work with members of minority races. ECF No. 10 at 9 (alleging that Crivello's suspicion towards him was influenced by Chanel's "race as a black person and [Plaintiff's] race as a white person"). "Section 1981 prohibits discrimination in the making and enforcement of private contracts." *Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage*, 409 F.3d 833, 837 (7th

Cir. 2005) (citing *Sanghvi v. St. Catherine's. Hosp., Inc.*, 258 F.3d 570, 573 (7th Cir. 2001)). "To state a claim under § 1981, [the plaintiff] must allege facts in support of the following propositions: (1) [the plaintiff] is a member of a racial minority; (2) the [defendants] intended to discriminate on the basis of race; and (3) the discrimination deprived [the plaintiff] of one or more rights enumerated in § 1981, such as the making and enforcing of a contract." *Id.* (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)).

With respect to the first element, the fact that the plaintiff is white does not preclude his claim. *See Rehbock v. Dixon*, 458 F. Supp. 1056, 1063 n.5 (N.D. Ill. 1978) ("The present codification [of § 1981] proscribes racial discrimination whether it be directed against white or black citizens." (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976) and *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975)); *Arendale v. City of Memphis*, 519 F.3d 587, 594 n.5 (6th Cir. 2008) ("Although the express language of § 1981 suggests that its protection does not extend to 'white citizens,' the Supreme Court has held that white plaintiffs may state a claim under § 1981." (citing *McDonald*, 427 U.S. at 286–87)); *Broich v. Incorporated Village of Southampton*, 462 F. App'x 39, 42 n.1 (2d Cir. 2012) (same (citing *Keating v. Carey*, 706 F.2d 377, 383 n.9 (2d Cir. 1983))).

The Court must next analyze whether Plaintiff has plausibly alleged that Defendants "intended to discriminate on the basis of race." *Black Agents*, 409 F.3d at 837; *see also Padron v. Wal-Mart Stores, Inc.*, 783 F. Supp. 2d 1042, 1054 (N.D. Ill. 2011) ("[A] plaintiff must make an 'allegation of racial animus, either explicit or *reasonably inferable from the pleadings*' to state a claim under § 1981." (internal quotation marks omitted) (quoting *De La Torres v. Gianni Furniture Co.*, No. 85 C 9924, 1986 U.S. Dist. LEXIS 24597, at *4 (N.D. Ill. June 4, 1986))). The Court is satisfied, with the benefit of its

liberal reading of Plaintiff's second amended complaint, that this element has been stated sufficiently for the purposes of screening. *See* ECF No. 10 at 14 (alleging that Plaintiff was "discriminated against . . . because of racial facts" and that Crivello was "driven by race prejudiced . . . suspicion"); *id.* at 8 (alleging that he was prosecuted based on his interactions with Chanel in the absence of probable cause and due to, inter alia, "racial discrimination").

Plaintiff's claim fails at the third element, however—that the alleged discrimination deprived the plaintiff "of one or more rights enumerated in § 1981." *Black Agents*, 409 F.3d at 837. As discussed *supra* Section 4.3.4, Plaintiff's allegations do not allow for the reasonable inference that he was deprived of his ability to contract with Chanel in connection with his business. Plaintiff does not plausibly allege that Crivello prevented or prohibited Plaintiff from entering lawful contracts with Chanel. As earlier noted, Plaintiff does not even allege that he was attempting to contract, or was specifically interested in contracting, with Chanel on the day in question. At most, Plaintiff has alleged that Defendants made it more difficult for him to engage with "prostitutes" via in-person meetings. *Supra* Section 4.3.4. This claim is accordingly subject to dismissal. However, because the Court cannot necessarily conclude at this juncture that amendment as to this claim would be futile, it will dismiss this claim without prejudice. *See Wade*, 775 F. App'x at 248 (citations omitted).

### 4.3.7   Fabrication of Evidence

Plaintiff alleges that Crivello fabricated evidence, "outright lying . . . in his police reports and in the citation [regarding Plaintiff]." ECF No. 10 at 13; *id.* at 15 ("Crivello . . . and abettor . . . Torres, and the [C]ity of

Case 2:24-cv-01389-JPS     Filed 03/18/25     Page 28 of 39     Document 13

Milwaukee, knowingly fabricated evidence that was introduced against [P]laintiff . . . during his trial.").

This claim will not proceed as pled. "[A] police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). "A deprivation of liberty is a necessary element of a due-process claim premised on allegations of evidence fabrication." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016). "[A] plaintiff who alleges that he was convicted and imprisoned on the strength of fabricated evidence has stated a fabricated evidence claim." *O'Dekirk v. Roechner*, No. 23-cv-4658, 2025 U.S. Dist. LEXIS 28319, at *9 (N.D. Ill. Feb. 18, 2025) (citing *Fields v. Wharrie*, 740 F.3d 1107, 1113 (7th Cir. 2014) and *White v. City of Chicago*, 149 F. Supp. 3d 974, 976 (N.D. Ill. 2016)).

Plaintiff has not plausibly alleged that his liberty was deprived because of the alleged fabrication. To the contrary, Plaintiff pleads that the case against him was dismissed, and he was never convicted. ECF No. 10 at 22. *Bianchi*, 818 F.3d at 319 ("Bianchi and his colleagues suffered no deprivation of liberty; they were acquitted at trial."); *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015) ("Nor does the burden of appearing in court and attending trial, in and of itself, constitute a deprivation of liberty." (quoting *Alexander v. McKinney*, 692 F.3d 553, 557 & n.2 (7th Cir. 2016))).

Nor has Plaintiff alleged that he was detained pre-trial, so he cannot proceed on a claim of wrongful pretrial detention based on fabricated evidence. *See Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) ("[A] claim for wrongful pretrial detention based on fabricated evidence is distinct from a claim for wrongful *conviction* based on fabricated

evidence . . . ."); *O'Dekirk,* 2025 U.S. Dist. LEXIS 28319, at *9 ("[A] plaintiff who was arrested, immediately released on bond, and not found guilty at trial does *not* have a viable evidence fabrication-based due process violation even if he was prosecuted with fabricated evidence." (citing *Bianchi,* 818 F.3d at 319–20)).

Accordingly, this claim is subject to dismissal. However, because the Court cannot conclude that amendment as to this claim would necessarily be futile, it will dismiss this claim without prejudice. *See Wade,* 775 F. App'x at 248 (citations omitted).

### 4.3.8 Failure to Intervene

Plaintiff also alleges that Torres "knew that . . . Crivello and the [C]ity of Milwaukee were depriving [him] of [his] right to meet with other people," "had a realistic opportunity to" intervene, but failed to do so. ECF No. 10 at 16. Plaintiff may proceed on this claim against Torres.

"[T]o establish a claim for failure to intervene, a plaintiff must show that the officer had reason to know 'that any constitutional violation has been committed by another law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.'" *Easley v. Reuss,* 247 F. App'x 823, 827 (7th Cir. 2007) (quoting *Windle v. City of Marion,* 321 F.3d 658, 663 (7th Cir. 2003)). Plaintiff has sufficiently stated this claim for purposes of the screening stage because he alleges that Torres had the opportunity to intervene in constitutional violations but failed to do so. ECF No. 10 at 16.

The Court also notes that "[i]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation . . . ." *Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005) (citing *Fillmore v. Page,* 358 F.3d 496 (7th Cir. 2004)). Because the Court

has concluded that several of Plaintiff's constitutional claims may proceed, *see supra, e.g*, Sections 4.3.1 and 4.3.3.2, it will not dismiss the failure to intervene claim on this ground. Whether Plaintiff may maintain his failure to intervene claim as the case progresses, however, will depend in part on his ability to make out an underlying constitutional violation.

### 4.3.9   State Law Malicious Prosecution

Plaintiff also purports to state a claim of malicious prosecution. He alleges that Crivello, the City, and Torres maliciously prosecuted him for an ordinance violation in Milwaukee County municipal court. ECF No. 10 at 22. Plaintiff may proceed on this claim.

"An action for malicious prosecution will lie only where the proceeding upon which the claim is based is begun with malice, without probable cause[,] and ends in failure." *State v. Minniecheske*, No. 90-2636, 486 N.W.2d 36 (Table), 1992 Wisc. App. LEXIS 362, at *9 (Wis. Ct. App. Apr. 14, 1992) (citing *Pronger v. O'Dell*, 379 N.W.2d 330, 332 (Wis. Ct. App. 1985)). Such claims are not, however, "limited to individuals who actually filed charges against or prosecuted the plaintiff." *McCaigue v. Lawrence Univ.*, No. 2023AP1979, 2024 Wisc. App. LEXIS 1019, ¶ 30 (Wis. Ct. App. Dec. 3, 2024).

Plaintiff has sufficiently alleged that Crivello, Torres, and the City maliciously insisted upon his prosecution, that the prosecution lacked probable cause, and that it ended in Plaintiff's favor in the form of dismissal with prejudice. ECF No. 10 at 22. The Court is aware of no specific authority at this juncture that would render the City immune from such a claim by virtue of its status as a municipality; if such authority exists, the parties are free to bring it to the Court's attention at a later date. *See Whispering Springs Corp. v. Town of Empire*, 515 N.W.2d 469, 472–73 (Wis. Ct. App. 1994) (evaluating claim of malicious prosecution against municipality and

identifying no issue with the defendant's status as a municipality); *Dowd v. New Richmond*, Nos. 84-1538, 85-0140, 384 N.W.2d 366, 1986 Wisc. App. LEXIS 3152, at *9–11 (Wis. Ct. App. Jan. 21, 1986) (same). Plaintiff may accordingly proceed on a Wisconsin malicious prosecution claim against Crivello, Torres, and the City.

### 4.3.10 *Monell* Claim

Plaintiff also purports to state claims for relief against both the City and Milwaukee County, *see supra* note 2, under *Monell*, including a failure to train claim. ECF No. 10 at 8–11, 17–18, 22, 25–27. "A governmental unit is not liable under § 1983 unless the deprivation of constitutional rights is caused by its own policy or custom." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty*., 183 F.3d 734, 737 (7th Cir. 1999) and *Monell*, 436 U.S. at 694); *see also Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability. . . . A municipality may only be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom." (citing *Monell*, 436 U.S. at 694)). "A local government unit's unconstitutional policy or custom can be shown by: (1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker,* 526 F.3d at 977 (citing *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004)).

Plaintiff makes myriad allegations of unconstitutional policies and practices on the part of both the City and Milwaukee County. *See* ECF No. 10 at 8, 15 (alleging that the City has "a widespread and well known practice of being suspicious of people because of their race or sex" and "a city policy

that says the police shall arrest people on the basis of mere suspicion, and warn strangers against others who the police find to be suspicious"); *id.* at 17 (alleging that Defendants "acted with a conscious desire to prevent . . . interracial and mixed sex relationships from occurring, including without limitation by the official written city policy, designed to deter, prevent, and accommodate interference with business relationships or other relationships between or including people who are determined to be 'suspicious'"); *id.* (alleging that the City is liable "under the various theories of municipal liability, including informal custom, formal custom, official written policy, official unwritten policy," etc.); *id.* ("I'm also claiming a policy of the city and county of racial and sex[-]based discrimination and segregation . . . ."); *id.* at 22, 25 (alleging that the City and Milwaukee County have a policy of suppressing *Brady* materials and of covering up police misconduct).

A plaintiff who asserts a claim under *Monell* must ultimately demonstrate "policy or custom, municipal fault, and 'moving force' causation." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022). The plaintiff must also demonstrate that he was "deprived of a constitutional right." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (citing *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) and *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). The Court is satisfied, based on its liberal review and construction of Plaintiff's second amended complaint, that Plaintiff has sufficiently alleged these elements for purposes of the screening stage.

Plaintiff also alleges that the City failed to adequately train or supervise Crivello and others. ECF No. 10 at 11, 17 (alleging that the City is liable under the "failure to train" theory); *id.* at 12 ("The [C]ity of

Milwaukee's failure to adequately train and[/]or supervise it[]s police officers . . . caused my injury . . . ."). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Walker*, 526 F.3d at 977 (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). As with a failure to intervene claim, "there can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional rights." *Jenkins*, 487 F.3d at 492. Accordingly, whether Plaintiff can maintain his failure to train claim—and his other claims under *Monell*—will depend in part on his ability to make out an underlying constitutional violation. For the time being, Plaintiff may proceed on his various claims under *Monell*, including his failure to train claim.

### 4.3.11 Action for Mandamus

Lastly, Plaintiff asserts a "claim for mandamus" under Wis. Stat. § 19.37 and requests that the Court order Defendants "to provide . . . [P]laintiff with an additional video and audio record from the police station showing the incident complained of in [his] [second amended] complaint." ECF No. 10 at 21–22.

Wis. Stat. § 19.37(1) provides that if an authority withholds or delays granting access to a record or part of a record after a written request for disclosure is made, the requester may "bring an action for mandamus asking a court to order release of the record." "Mandamus is an extraordinary legal remedy, and one seeking a writ must establish that it is based on a clear, specific legal right that is free from substantial doubt." *State ex rel. Miller v. Milwaukee Cnty. Election Comm'n*, No. 2023AP1116, 2024 Wisc. App. LEXIS 1085, ¶ 8 (Wis. Ct. App. Dec. 26, 2024) (quoting *State ex*

*rel. Lewandowski v. Callaway*, 346 N.W.2d 457, 460 (Wis. 1984)). "A petitioner must show the following four factors in order to obtain a writ of mandamus: '(1) a clear legal right to relief; (2) a positive and plain legal duty on the part of the official or body to whom the writ is directed; (3) substantial damage due to the nonperformance of the duty; and (4) no adequate remedy at law.'" *Id.* (quoting *State ex rel. Meessmann v. Town of Presque Isle*, 993 N.W.2d 749, ¶ 13 (Wis. Ct. App. 2023)).

Plaintiff alleges that he made an open records request for a copy of the "video and audio record from the police station showing the incident complained of" in his second amended complaint but that the disc provided to him in response to that request "was seriously damaged" such that he is "afraid to view it" for fear that he "might render it unusable." ECF No. 10 at 21–22. He requested a duplicate, nondamaged copy from police but was denied. *Id.* at 22. He accordingly seeks an undamaged duplicate copy. *Id.* The Court is satisfied for purposes of the screening stage that Plaintiff may proceed on this claim.

**5.     CONCLUSION**

For the reasons discussed herein, Plaintiff's motions for leave to proceed in forma pauperis and for e-filing privileges are granted, and his motion for an extension of time to effectuate service of process is denied.

Plaintiff is authorized to proceed on the following claims as discussed herein: Fourteenth Amendment equal protection; Fourth Amendment unlawful arrest; First Amendment right to peaceably assemble and of association; First Amendment retaliation; failure to intervene; Wisconsin law malicious prosecution; municipal liability under *Monell*, including failure to train; and a claim for mandamus under Wis. Stat. § 19.37. Plaintiff's substantive due process claim under the Fourteenth

Amendment grounded in occupational liberty is dismissed with prejudice. The following claims are dismissed without prejudice: fabrication of evidence claim, First Amendment free exercise/freedom of religion, state-created danger, Fourteenth Amendment procedural due process claim grounded in occupational liberty, Fourteenth Amendment due process claim grounded in the right to contract, and any claim under § 1981.

Should Plaintiff wish to attempt to amend his pleadings to attempt to state the claims that have been dismissed without prejudice, he shall do so on or before **April 8, 2025**. Any third amended complaint must bear the docket number assigned to this case and must be labeled "Third Amended Complaint." Any third amended complaint must be complete in and of itself without reference to the original or amended complaints. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citing *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)). In the case of amendment, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)).

If Plaintiff files a third amended complaint, it will become the operative complaint in this matter, and the Court will screen it in accordance with 28 U.S.C. § 1915. If Plaintiff fails to timely file a third amended complaint, or files one that fails to comply with Rule 8, this action will proceed solely as to the claims on which Plaintiff has been authorized to proceed herein.

Accordingly,

**IT IS ORDERED** that Plaintiff William Louis Armstrong's motion for leave to proceed in forma pauperis, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong's motion for an extension of time, ECF No. 12, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong's motion for e-filing privileges, ECF No. 11, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of Court add Milwaukee County to this matter as a defendant;

**IT IS FURTHER ORDERED** that the Clerk of Court update ECF No. 10 on the docket to read "Second Amended Complaint" instead of "Amended Complaint";

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong's First Amendment free exercise of religion claim be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong's Fourteenth Amendment occupational liberty substantive due process claim be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong's Fourteenth Amendment procedural occupational liberty due process claim be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong's Fourteenth Amendment right to contract due process claim be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong's Fourteenth Amendment state-created danger claim be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong's evidence fabrication claim be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong's 42 U.S.C. § 1981 claim be and the same is hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong may file a third amended complaint, if at all, on or before **April 8, 2025**; failure to timely file a third amended complaint, or the filing of one that fails to comply with Rule 8, will result in this case proceeding solely on the claims that the Court did not dismiss in this Order.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2025.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

Plaintiff will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**<u>DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS</u>**. If mail is received directly to the Court's chambers, **<u>IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE</u>**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **<u>IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE</u>**.