# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIAM LOUIS ARMSTRONG, III

      Plaintiff,

v.

CITY OF MILWAUKEE, CHAD
CRIVELLO, MILWAUKEE COUNTY,
and SALAH AL-ZALLOUM,

      Defendants.

Case No. 24-CV-1389-JPS

**ORDER**

## 1. INTRODUCTION

Plaintiff William Louis Armstrong, III ("Armstrong"), proceeding pro se, sues the City of Milwaukee (the "City"), Chad Crivello ("Crivello"), Salah Al-Zalloum ("Al-Zalloum"), and Milwaukee County (the "County") (collectively, "Defendants") for various civil rights violations. As relevant here, in the most recent screening order, the Court allowed Armstrong to proceed against the County under a theory of municipal liability under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, (1978) (hereinafter "*Monell*"), including a failure to train claim. ECF No. 16 at 14–15. The County answered the operative complaint in September 2025. ECF No. 33.

Now before the Court is the County's fully-briefed motion for judgment on the pleadings, ECF Nos. 38, 39, 42, 45, and various other motions. For the reasons set forth below, the Court will grant the County's motion for judgment on the pleadings, ECF No. 38, and its motion to file a corrected reply brief, ECF No. 44. The County will be dismissed with prejudice from this action accordingly.

Separately, the Court will deny Armstrong's motion for default judgment, ECF No. 32. Armstrong's most recent motion, construed as a motion to stay the proceedings, ECF No. 49, will also be denied.

## 2. LEGAL STANDARD

Once the pleadings are closed, a party may file a motion pursuant to Federal Rule of Civil Procedure 12(c) to challenge the sufficiency of the pleadings. "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgement as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017) (citing *Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987)).

A motion for judgment on the pleadings is analyzed under the same standard as motions to dismiss brought pursuant to Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014) (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)). To state a claim sufficient to withstand a Rule 12(b)(6) motion, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *Equal Emp't Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (modifications omitted)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is one with "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Twombly*, 550 U.S. at 556.

In evaluating a motion for judgment on the pleadings, the Court considers both the complaint and the answer(s), and as with Rule 12(b)(6) motions to dismiss, may also consider material subject to judicial notice. *Federated Mut. Ins. Co. v. Coyle Mech. Supply, Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020) (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *Vrana v. FedEx Freight, Inc.*, 638 F. Supp. 3d 927, 929 (C.D. Ill. 2022) (citing *Mohamed v. WestCare Ill., Inc.*, 786 F. App'x 60, 61 (7th Cir. 2019)). The Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). But the Court "need not accept as true 'legal conclusion[s, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Ultimately, dismissal is only appropriate "if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (quoting *R.J.R Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)). Notably, the Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal v. Moats*, 851 F.3d 714, 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## 3. PLAINTIFF'S ALLEGATIONS

### 3.1 Factual Allegations

In the months leading up to November 2021 when the allegedly unconstitutional government actions took place, Armstrong had been "doing outreach to members of the public, in a manner devised to reach a

high density of members of historically marginalized and underserved communities." ECF No. 14 at 2. He sought to run for mayor, "in furtherance of a lifelong dream," and at the same time, "to develop a public benefit company benefiting prostitutes." *Id*. As part of this plan, Armstrong "intended to advertise a business with his political candidacy" centered around a "financial services application, similar to Robinhood," which would "cater to commercial users." *Id*. The remaining plan was to "help prostitutes establish lawful passive incomes, by offering them opportunities to engage in lawful work with this business, and also by having some portion of the revenue from this benefit them any [] way in a charitable capacity." *Id*. Armstrong "actively intended to write such would-be former prostitutes into the cost structure of this business, operating it as something of a public benefit corporation." *Id*.

On the night in question, November 10, 2021, Armstrong was driving in the Milwaukee area when he was "flagged down by a woman" seeking "to be given a cigarette." *Id*. at 3. Armstrong pulled over and gave her a cigarette. *Id*. That woman, "named Channel,[1] asked to ride around with [Armstrong]." *Id*. In response, Armstrong stated "Now don't do that thinking . . . you'll get no money from me," intending to "communicate[] to her that she should not expect to make a prostitution sale." *Id*. She "persisted in expressing a desire to join . . . Armstrong for a drive, and . . . Armstrong permitted her to do so, and off they were." *Id*. Armstrong denies anything more than flirtation occurred during the drive. *Id*. Armstrong and Channel went to Bryant's and had one drink each, while she continued to

---

[1]At later points, he also refers to her as Chanel and Chanelle. For consistency, the Court will simply use Channel.

"flirt." *Id*. They left Bryant's together. *Id*. Armstrong then went to a local gas station to "purchase condoms" because "it seemed to [Armstrong] like things might continue to progress sexually without incrimination." *Id*. While in the gas station, Channel drove off with Armstrong's] car. *Id*.

Subsequently, he walked "a mile or so" to the police station to report the theft and spoke with Crivello, a Milwaukee Police Department officer. *Id*. at 4. By then, it was late evening. *Id*. According to Armstrong, Crivello wrongly drew the conclusion that the woman who stole his car was a prostitute because of his description of the circumstances, which included Armstrong's description of her as a black woman. *Id*. During this first interaction with Crivello, Armstrong also claims that, in the police report that was eventually produced, Crivello lied by saying that Armstrong and the woman "just talked," which, in his view, was overly "reductive" because "[Armstrong] openly skipped over the middle part" while talking to Crivello. *Id*. After the police report was submitted, Armstrong went home. *Id*. Once home, Armstrong wanted to ensure police investigated, so he called the police station to make sure they had obtained camera footage. *Id*. Crivello answered. *Id*. Crivello reported that police had the videos, but that they would not help. *Id*. Armstrong "pressed" Crivello on why the videos would not help, and at that point, Armstrong knew it was "sex and gender discrimination." *Id*. Crivello, in response, told Armstrong "because she was a prostitute I could arrest you." *Id*. Armstrong denied that it was "a crime to meet them." *Id*. Crivello and Armstrong went back and forth disagreeing on this point. *Id*. Armstrong then stated that he could come down to the police station to "sort this out." *Id*. Crivello told him, "if you come here[,] I'm going to arrest you." *Id*. Armstrong replied, "I'm on my

way." *Id*. He went to the police station, having locked his phone in advance. *Id*.

There, Crivello and Armstrong rehashed what happened, with Crivello "claiming that [Armstrong] said she was a prostitute, in such a manner where [Crivello] was representing that [Armstrong] had represented that the woman who stole his car was a prostitute," even though Armstrong had not made that representation. *Id*. at 5. Armstrong only said that it was "not a crime to meet them." *Id*. Armstrong, in the next paragraph, then seems to identify Channel as the prostitute in question, while indicating that he "had been generally doing professional outreach to prostitutes, but that [this] specific woman flagged him down under express lawful pretense, and despite initially fitting a superficial profile, seemed less like a prostitute as things progressed." *Id*. at 5.

Armstrong, while trying to advance his narrative of events, wanted to clarify his prior statements, but before he could "make that [narrative] abundantly clear," "another [Milwaukee Police Department] officer . . . Al-Zalloum butted in and kept interrupting." *Id*. 5–6. The officers reiterated that it was a "crime to meet" prostitutes despite Armstrong's protestations to the contrary. *Id*. at 6. Al-Zalloum asked in a "compound way" if Armstrong "knew if something would be a crime," and the officers construed his response as an acknowledgment that he had committed a crime, although that was not what he intended to say. *Id*. In Armstrong's view, "police framed [him] for felony crimes that [he] was innocent of," causing him "substantial mental trauma and significant economic injuries." *Id*. at 6–7. He says that the police report that followed falsely indicated that "he admitted felony crimes" and, as a result, he alleges he was wrongly prosecuted thereafter. *Id*.

### 3.2 Legal Claims

With that context, the Court turns to the specifics of Armstrong's claims against the County. First, Armstrong alleges that the County has a policy of "failing to comply with the due process requirements that potentially exculpatory evidence be provided to criminal defendants." *Id*. at 25. Specifically, the County "has a custom of inadequately preserving and providing *Brady* and [*G*]*iglio* materials to criminal defendants." *Id*. (citing *Brady v. Maryland*, 373 U.S. 83 (1983) and *Giglio v. United States*, 405 U.S. 150 (1972)).

Pursuant to this County policy, "Crivello . . . issued a citation, in order to avoid obligations related to the providing of exculpatory evidence to [Armstrong], and . . . to avoid having to preserve the related *Brady* and *Giglio* materials created during the incident." *Id*. "Milwaukee [C]ounty [D]istrict [A]ttorney John T. Chisholm, assistant district attorneys, and others, have been aware of *Brady* and *Giglio* evidence not being preserved by the Milwaukee [P]olice [D]epartment in numerous cases, and therefore not provided to criminal defendants who would be entitled to it." *Id*. at 26.

Armstrong cites to Milwaukee Police Department General Order 2021-18 (October 8, 2021) and General Order 2016-34 (July 15, 2016) as possible policies that could form the basis of said violations.[2] *Id*. at 26. Armstrong also points to certain chapters of the Milwaukee Code of Ordinances discussing under which circumstances an officer is to conduct an arrest. *Id*. at 8.

---

[2]Armstrong does not clarify what those orders allegedly involved or provide a copy. No judicially noticeable copy appeared online during the Court's research. Ultimately, it does not matter what they contained for purposes of this decision because, as described in more detail below, these orders were not promulgated by the County, and therefore, have no relevance here.

Finally, Armstrong alleges the County has a policy of racial and sex based "discrimination and segregation, which caused [his] injuries." *Id*. at 17. He claims this is evidenced, in part, "by sex and gender segregated bathrooms throughout the county, and the register of deeds practices related to racially restrictive covenants including the ratification of those racially restrictive covenants." *Id*. It is also evidenced by, in his view, "a policy of sex and racial discrimination and segregation that they were aware of and deliberately indifferent to, including . . . sex segregated public restrooms and racial segregation enforced through racially disparate criminal law enforcement involving detention of primarily black people in . . . [C]ounty facilities." *Id*.

Armstrong clarifies that "[d]espite the fact that the Milwaukee [P]olice [D]epartment is a city agency, under [a *Monell*] theory of liability being pleaded in the alterna[tive], the driving force behind the acts injuring [him] was the [C]ounty policy," because Crivello and Al-Zalloum "carried out their functions related to the investigation and prosecution of state crimes in coordination with the [C]ounty." *Id*. at 25.

### 4. RULE 12 MOTION ANALYSIS

The County asserts that it is entitled to judgment on the pleadings for three reasons: first, it is not a proper party to this action; second, Armstrong fails to meet the pleading requirements for a *Monell* claim premised on a County policy or custom; and third, Armstrong's failure to train allegation fails under *Monell*. ECF No. 39 at 4–9. As explained below, the County's motion for judgment on the pleadings will be granted for failure to state a claim under *Monell*, a fatal defect which also plagues Armstrong's corresponding failure to train claim.

As a preliminary matter, the County moved for leave to file a corrected reply brief. ECF No. 44. Although the Court agrees with Armstrong's assessment that the motion was necessitated by the inclusion of a fictitious case, ECF No. 47 at 2, the Court does not have more information as to why that happened. Regardless, the County caught and corrected the error the same day, meaning that there is no prejudice in allowing the correction. Further, the County's original reply brief included real case law in support of the proposition that the County sought to make, meaning that the fictitious case would be redundant even if it were real. Thus, the Court will grant the County's motion to amend and correct the brief, ECF No. 44, and has considered the corrected brief, ECF No. 45, in the analysis below.

### 4.1 Armstrong Fails to Properly Plead a *Monell* Claim

The Court addresses the County's arguments that it is not a proper party to this action and that Armstrong fails to sufficiently plead a *Monell* claim premised on a County policy or custom together in this Section.

In general, to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). A plaintiff may proceed against a municipal government on a § 1983 claim under *Monell* if the constitutional violation was caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017) (en

banc) (citing *Monell,* 436 U.S. at 690–91). "For a defendant to be liable under § 1983, he or she must have participated directly in the constitutional violation." *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). In the *Monell* claim context, this means that a complaint that "fails to allege any actions" by, or which can be attributed to, a particular municipal entity is subject to dismissal against that entity. *See Wilson v. Civil Town of Clayton*, 839 F.2d 375, 383 (7th Cir. 1988). There is a higher bar to proceed past a Rule 12 motion on *Monell* claims than other claims. *Braun v. Abele*, 15-CV-252-JPS, 2015 WL 3904960, at *5 (E.D. Wis. June 25, 2015) ("Because a *Monell* claim is complex, more factual specificity is required to sustain a *Monell* claim." (citing *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011))).

Here, the County correctly notes that the record reflects Crivello and Al-Zalloum are City, not County, employees. *See* ECF No. 24 at 1 (City's Answer is on behalf of itself, Al-Zalloum and Crivello). Armstrong's allegations of wrongdoing against City employees, on their own, cannot support *Monell* liability against the County. *See Burks v. Tate*, Case No. 20-cv-782-pp, 2023 WL 7301853, at *9 (E.D. Wis. Mar. 30, 2023) (noting that the "police department is an agency of the [C]ity") (citing *Averhart v. City of Chicago*, 114 F. App'x 246, 247 (7th Cir. 2004)); *see also Wilson*, 839 F.2d at 383 (affirming the dismissal of a *Monell* claim against the County of Hendricks where the complaint failed to allege any acts of wrongdoing by the County of Hendricks or any of its commissioners).

Armstrong suggests that the County had a policy of inadequately preserving and providing *Brady* and/or *Giglio* materials and/or that Crivello declined to seek criminal charges against him to avoid having to comply with this County policy. His only allegations in support of that theory are

the two General Orders by the Milwaukee Police Department and certain provisions relating to procedures of arrest from the Milwaukee Code of Ordinances, neither of which are promulgated by the County. Accordingly, these policies cannot serve as a basis for *Monell* liability against the County. *See, e.g.*, *Boardroom Entm't MKE, LLC v. City of Milwaukee*, 158 F. Supp. 3d 743 (E.D. Wis. 2016) (the City Attorney's office defended a claim that an ordinance in the Milwaukee Code of Ordinances violated the Constitution); *Ott v. City of Milwaukee*, 48 F. Supp. 3d 1197, 1205, 1208–09 (E.D. Wis. 2014) (evaluating the liability of the City based on a General Order issued by the Milwaukee Police Department); *Milwaukee County v. City of Milwaukee*, 49 N.W.2d 902 (Wis. 1951) (the caption itself reveals they are two separate and distinct entities); *see also Wilson*, 839 F.2d 375 at 383 (demonstrating that, to sustain a *Monell* claim, plaintiff must show that the specific entity is liable). And, for the reasons explained in the prior paragraph, Crivello's alleged skirting of this policy cannot serve as a basis for County liability.

Armstrong provides no factual basis to conclude that those Milwaukee Police Department General Orders or Ordinances were otherwise caused by a County official. His threadbare allegations here mirror those in *Wilson*, 839 F.2d 375, which were not well taken by the Seventh Circuit. In that case, the court noted that the plaintiff's allegations suggested "the [town] Marshals had the authority to make law enforcement policy for the town, [and, thus] could create official policy and the [allegedly unconstitutional] eviction could have been undertaken pursuant to this official policy." *Id*. at 382 (citation omitted). Here, Armstrong has similarly suggested that the County had the authority to make the allegedly unconstitutional ordinances and orders, which Crivello and Al-Zalloum allegedly acted in accordance with in arresting him. However, as in *Wilson*,

to reach the conclusion that the County was "in a position to establish final police policy would require wild speculation, totally unsupported by even a liberal reading of the complaint." *Id.* at 382–83.

Armstrong's theory that the County District Attorney Chisholm and assistant district attorneys are policy makers for the City would require even "wild[er] speculation." *Id*. Such individuals are not employed by the County. *Ass'n of State Prosecutors v. Milwaukee County*, 544 N.W.2d 888, 889 (Wis. 1996) ("As of January 1, 1990, all district attorneys became state employees."). Even if these individuals were County employees, Armstrong's allegations that Chisholm or an assistant district attorney caused or permitted City employees such as Crivello or Al-Zalloum to commit *Brady* or *Giglio* violations, *see* ECF No. 14 at 26, are entirely speculative and therefore insufficient to state a *Monell* claim against the County.

As such, Armstrong's claim that the County had a custom, practice, or policy of inadequately preserving and providing *Brady* and *Giglio* materials to criminal defendants, which somehow caused the alleged wrongdoing by City employees Crivello and Al-Zalloum, fails as a matter of law. *See Elkins v. Schrubbe*, No. 04 C 85, 2006 WL 1663779, at *3 (E.D. Wis. June 15, 2008) ("To establish liability under § 1983, [the plaintiff] *must* show that a *county* policy, practice, or custom . . . caused his constitutional deprivation" (citing *Calusinksi v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994)) (emphasis added)).

Armstrong's other attempted connection between the police and the County is also unpersuasive. He suggests that the City of Milwaukee Code of Ordinances also allows for the imprisonment of individuals for nonpayment of fines and that County officials are responsible for this

unconstitutional policy because they run the House of Corrections and County Jail. ECF No. 42 at 17–18. However, he has no standing to proceed against the County on this theory of *Monell* liability.

To have standing to advance any constitutional claim in federal court, a plaintiff must demonstrate "(1) that he has suffered 'injury in fact'; (2) that the injury is 'fairly traceable' to the actions of the defendant; and (3) that the injury will likely be redressed by a favorable decision." *MDK, Inc. v. Village of Grafton*, 277 F. Supp. 2d 943, 946–47 (E.D. Wis. 2003) (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). Armstrong has not alleged that he was imprisoned because of a failure to pay a fine under the local code he cites. *See generally* ECF No. 14. To the extent Armstrong alleges he was "subjected to a threat of imprisonment in county facilities" due to this ordinance, ECF No. 42 at 18, Armstrong cannot proceed because such allegations are only hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). For these reasons, the Court's analysis as to this argument is at an end.

Armstrong's last argument is that *Monell* liability does not require "employment or agency by policy executors." ECF No. 42 at 2 (citing *Monell*, 436 U.S. at 694). In support, he turns to a City of Birmingham's provision, ostensibly during the Jim Crow era, requiring the segregation of bathrooms, even in private restaurants. *Id*. at 4. He also observes that certain Federal Rules of Civil Procedure similarly direct the parties on how to effectuate service of certain filings, even though the parties executing service are not employees of the federal government. *Id*. at 4 (citing FED. R. CIV. P. 5). He then returns to a discussion of the legislative history of § 1983, citing the following language in *Monell* in support: "Indeed, the fact that Congress did specifically provide that A's tort became B's liability if B

'caused' A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent." *Id*. at 3 (citing 436 U.S. at 692).

First, Armstrong cannot construe *Monell's* holding requiring causation as suggesting that *any* entity or person can serve as the casual link. *Monell* explained how and why municipality liability was limited to particular circumstances. *See Smith v. Milwaukee County*, Case No. 22-CV-1555-PP, 2023 WL 4595701, at *4 (E.D. Wis. July 18, 2023) (explaining that, under *Monell*, "[§] 1983 limits liability to public employees who are personally responsible for a constitutional violation" (citing *Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009))). The law on this point is clear and there is no reason to dive into the history behind the statute's enactment, as Armstrong attempts to do. *See Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184 n.29 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning." (citing *Ex parte Collett*, 337 U.S. 55, 61 (1949))). To the extent Armstrong invokes Jim Crow laws and the Federal Rules of Civil Procedure to provide an example of policies that do not require employment or agency to cause constitutional violations, the Court is not persuaded either. Neither of these establish the standard for causation or otherwise bear on this case in any way.

Ultimately, there is no County policy, custom, or practice sufficiently pled here, so Armstrong does not meet the pleading standard for a *Monell* claim premised on a County policy or custom. *Abele*, 2015 WL 3904960, at *5. The Court will, therefore, dismiss that claim with prejudice.

### 4.2 Armstrong Fails to Properly Plead a Failure to Train Claim

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. (citing *Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). A claim can only exist where the failure "amounts to deliberate indifference to the rights of a persons with whom [the untrained officials] come into contact." *Id*. (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). As the County notes, and as explained above, Armstrong "identifies no . . . County employee, policymaker, or policy." ECF No. 43 at 6. Indeed, there are no allegations to shore up this claim, nor facts evidencing a "pattern of similar constitutional violations by untrained employees" which is "'ordinarily necessary'" for a *Monell* claim under that theory. *Connick*, 563 U.S. at 62 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).

With no allegations that would show of any violation of Armstrong's constitutional rights by the County, there can be no liability under *Monell* for failure to train. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2006)). As such, Armstrong's *Monell* claim premised on a failure to train must also be dismissed with prejudice.

### 4.3 The County's Alleged Improper Denials

In paragraph 88 of the operative complaint, Armstrong alleges that Defendants:

did subject [him] to or caused [him] to be subjected to the deprivation of rights secured the United States Constitution and laws of the United States, under color of law, and in such manner as to be unlawful for both individuals as well as municipality defendants, and by doing so did cause redressable damages to [him].

ECF No. 14 at 21. In its answer, the County responds that "[t]his is a legal conclusion to which no answer is required." ECF No. 33 at 37. Armstrong argues that this was an improper response because the County must either admit or deny or state a lack of knowledge to admit or deny. ECF No. 42 at 11 (citing FED. R. CIV. P. 8(b)). Based on the Court's review of the case law, Armstrong may have a point. *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, Case No. 1:14-cv-00006-RLM-SLC, 2017 WL 1101096, at *3 (N.D. Ind. Mar. 21, 2017) (collecting cases by district courts in the Seventh Circuit that suggest that such an answer is insufficient and improper); *contra U.S. v. 45.43 Acres of Land Situate in Ada Cnty.*, Case No. CV 08–463–S–CWD, 2009 WL 1605127 at *7 (D. Idaho June 4, 2009) (noting that "whether a particular statute or law applies to the [facts] is a question for judicial review" (citing *United States v. .95 Acres of Land*, 994 F.2d 696, 699 (9th Cir. 1993))).

The County's use of the phrase "to the extent that" at other points in its answer may also be, as Armstrong notes, ECF No. 42 at 9,[3] an improper qualified response under the law. *See, e.g.* ECF No. 33 at 46 ("This paragraph contains no factual allegation directed at Defendant requiring a response. To the extent [that] a response is required, Defendant denies the

---

[3]Armstrong also suggests that the County's answer to the first paragraph— "Defendant denies that Plaintiff is entitled to the relief he seeks"—is improper. ECF No. 42 at 13 (citing ECF No. 33 at 2). But the Court can find no case law in support of that proposition. To the contrary, the Court finds this language to constitute an unequivocal denial consistent with Federal Rule of Civil Procedure 8(b).

allegations."); *Keller v. Enhanced Recovery Co., LLC*, Case No. 4:18-cv-15, 2018 WL 5650036, at *2 (N.D. Ind. Oct. 31, 2018) (noting that this phrasing "is akin to an impermissible qualified denial" (citing *Valley Forge Ins. Co.*, 2017 WL 1101096, at *2 and *Trs. of Auto. Mechs. Local No. 71 Pension & Welfare Funds v. Union Bank of Cal., N.A.*, Case No. No. 08 C 7217, 2009 WL 4668580, at *1 (N.D. Ill. Dec. 2, 2009))).

However, none of these district court cases are binding authority on the Court. *See Day v. Wooten*, 947 F.3d 453, 463 (7th Cir. 2020) (noting that district court opinions are "not binding precedential authority" (citing *Mason-Funk v. City of Neenah*, 895 F.3d 504, 509 (7th Cir. 2018))). More importantly, the Court retains discretion to grant or deny Armstrong the relief he effectively seeks, be it in the form of striking the pleadings or deeming the allegations admitted. *See Mulligan v. Bd. of Tr. of Ind. Univ.*, Case No. 1:24-cv-00096-TWP-MJD, 2024 WL 1972751, at *3 (S.D. Ind. May 3, 2024) (noting that the Court has discretion to grant or deny a motion to strike (citing *McLeod v. Arrow Me. Transp., Inc.*, 258 F.3d 608, 617 (7th Cir. 2001))); *Donnelly v. Frank Shirey Cadillac, Inc.*, Case No. 05 C 3520, 2005 WL 2445902, at 1 (N.D. Ill. Sept. 29, 2005) (noting that "it is within the Court's discretion to find that the defendant has not denied the plaintiff's allegation and deem that allegation admitted" (citing FED. R. CIV. P. 8(d)). Even if Armstrong had brought either a motion to strike or a motion to deem the allegations admitted, the Court would not grant such a motion.

In this case, such relief would only serve to delay, and not expedite these proceedings, which is entirely antithetical to what these procedural rules seek to accomplish. *See Mulligan*, 2024 WL 1972751, at *3 (suggesting that motions to strike are generally disfavored unless they "remove unnecessary clutter from the case" and "expedite" the proceedings (quoting

*Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989)); FED. R. CIV. PRO. 8(e) (advising courts to construe as pleadings "so as to do justice"). More pointedly, the imprecise or otherwise improper answer here is completely resolved by the fact that the parties have already briefed out this motion for judgment on the pleading, thereby correcting any imprecision or other defect. *See N. Ind. Metals v. Iowa Exp., Inc.*, No. 2:07-CV-414-PRC, 2008 WL 2756330, at *3 (N.D. Ind. July 10, 2008) (noting that imprecise answers "may be made clear if contained within the context of an enlarged, clear, coherent response" (citing *McGrath v. Godshalk*, Case No. 07 CV 34, 2007 WL 2746865, at *12 (N.D. Ind. Sept. 18, 2007))). As such, the Court will not consider these allegations admitted or otherwise strike any part of the County's answer. Indeed, any allegedly improper answer would not have affected the Court's decision here on this motion for judgment on the pleadings or otherwise changed the fact that the Court must dismiss the County from this action based on the allegations herein.

5.      **OTHER MOTIONS**

        5.1      **Armstrong's Motion for Default Judgment**

        In September 2025, Armstrong brought a motion for default judgment. ECF No. 32. However, Armstrong failed to complete the first step, obtaining entry of default from the Clerk of Court, rendering the motion premature. *See* FED. R. CIV. P. 55(b)(1). More importantly, even if he had correctly moved the Clerk of Court for entry of default, there would have been no grounds to grant it. As the County notes, pursuant to the Memorandum of Understanding between the Court and the County, the County has sixty days to file a responsive pleading and, in this case, Milwaukee County filed a motion to dismiss on day fifty-eight of sixty. ECF No. 35 at 1. When that motion was denied, the Court provided a timeframe

for a further responsive pleading, and the County then filed an answer within that timeframe. *Id.* at 2 (citing ECF No. 33). Accordingly, the County is not in default. As such the motion for default judgment must be denied.

### 5.2 Armstrong's Motion to Stay

More recently, Armstrong filed a motion for an extension of time in connection with the deadlines set forth by the United States Supreme Court in another one of Armstrong's cases over which this Court presided and which is currently on appeal. ECF No. 49 (citing *Armstrong v. Boyland Auto BGMC LLC*, Case No. 24-CV-765 (E.D. Wis. 2024) ("*Boyland* District Court Case"), Appeal No. 24-3182 (7th Cir. 2024) ("*Boyland* Appeal")). The Court dismissed that case, in part, due to Armstrong's failure to comply with the Court's orders, a decision which the Seventh Circuit affirmed. *Boyland* District Court Case, ECF Nos. 14, 26. Armstrong now states that the *Boyland* case is "currently pending in SCOTUS." ECF No. 49 at 4.

Armstrong indeed filed a petition for a writ of certiorari, which is currently pending before the Supreme Court. *Boyland* Appeal, ECF No. 25. The Supreme Court has not made a decision on whether to hear his case at this juncture. *See generally Boyland* District Court Case and Appeal. However, other than suggesting that *Boyland* is "pertinent" to this case and that the Court "may be familiar with the [S]eventh [C]ircuit mandate from *Boyland*," Armstrong has made no showing that the *Boyland* bears in any way on this case, or that he will likely prevail on the merits before the Supreme Court. ECF No. 49 at 4. Such a showing must be made to justify imposing a stay. *Woods v. Dimensions Living Cudahy*, LLC, Case No. 25-CV-378-JPS, 2026 WL 194680, at *1–2 (citing *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010)). Accordingly, the argument is waived. *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607

(7th Cir. 2016) (noting that perfunctory arguments are waived (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006))). Plaintiff's motion for a stay, ECF No. 49, will be denied.

In addition to the fact the motion has no merit, it also did not comply with the Court's Comprehensive Protocols and Procedures Order, ECF No. 26 at 11, despite Armstrong's assertion to the contrary. ECF No. 50 (citing ECF No. 26). It is apparent from Armstrong's own words that he did not hear back from counsel prior to filing the submission. *Id*. at 2. Although perhaps a few business days passed without a response, the motion itself does not have the urgency Armstrong claims, as no deadlines are forthcoming in this case, so Armstrong could and should have waited until hearing back from opposing counsel before filing his motion. The Court admonishes Armstrong that further filings of motions that do not comply with the Court's orders may result in dismissal of his case without further warning.

**6.      CONCLUSION**

Armstrong fails to state any claim under *Monell* against the County, and the County is entitled to judgment on the pleadings and will be dismissed with prejudice from this action. His motion for default judgment will be denied. Similarly, the motion to stay the proceedings is likewise without merit and will be denied. As for the remaining Defendants, namely the City, Crivello, and Al-Zalloum, the Court will order them to file a joint Rule 26(f) report **within two weeks from the date of this Order**. At that time, the Court will enter a scheduling order so that this litigation may continue its course.

Accordingly,

**IT IS ORDERED** that Plaintiff William Louis Armstrong, III's motion for default judgment, ECF No. 32, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Milwaukee County's motion for judgment on the pleadings, ECF No. 38, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Milwaukee County's motion to amend or correct the reply brief, ECF No. 44, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Milwaukee County be and the same is hereby **DISMISSED with prejudice** from this action;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong, III's motion to extend time in connection with the deadlines set by the Supreme Court of the United States, ECF No. 49, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong, III and Defendants City of Milwaukee, Chad Crivello, and Salah Al-Zalloum file a joint Rule 26(f) report **within two weeks from the date of this Order**.

Dated at Milwaukee, Wisconsin, this 11th day of May, 2026.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge